IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE                                            )
                                                 )
PECOLIA GRIFFIN WILSON,                          )          Case No. 07-50382
                                                 )
                          Debtor.                )
_____)


<u>MEMORANDUM OPINION CONFIRMING CHAPTER 13 PLAN</u>

This matter came before the Court on August 15, 2007, for confirmation of the Chapter

13 plan of reorganization (the "Plan") of the above-referenced debtor (the "Debtor") as described

in the Notice and Proposed Order of Confirmation filed by the Chapter 13 Trustee (the

"Trustee") on April 19, 2007.  John A. Meadows  appeared on behalf of the Debtor, and Vernon

J. Cahoon appeared on behalf of the Trustee.  The Trustee objects to confirmation on the basis

that the Plan violates Section 1325(b)(1)(B) of the Bankruptcy Code, which requires the Plan to

provide that all of the Debtor's projected disposable income during the applicable commitment

period (five years in this case) be applied to pay claims of unsecured creditors.  The Trustee

argues that the projected disposable income of an above median income debtor is not determined

exclusively by the calculation rendered by Form B22C and that, based on Schedules I and J, the

Debtor is not proposing to commit all of her projected disposable income to the Plan for the

benefit of her unsecured creditors.  The Trustee also argues that the Social Security income of

the Debtor's non-filing husband should be included in the calculation of projected disposable

income pursuant to Section 1325(b)(1)(B) as determined by Schedule I.  The Debtor argues that

the projected disposable income of an above median income debtor is determined solely by the

1

calculation rendered by Form B22C, and that Schedules I and J are not relevant to such a determination.  If her Schedules I and J are considered by the Court, then the Debtor argues that Section 101(10A)(B) prohibits the Court from considering the Social Security income of the Debtor's non-filing husband.  After consideration of the Plan, the evidence presented at the hearing, the arguments of the parties, and the relevant law, the Court will overrule the Trustee's objection and confirm the Plan.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L), which this Court has the jurisdiction to hear and determine.

## II.  FACTS

On March 9, 2007, the Debtor, although married, filed individually for Chapter 13 bankruptcy relief.  On April 19, 2007, the Plan was filed.  It provides for a plan payment of $750.00 each month for 60 months.[1]

The Debtor's original Schedule I showed monthly income, including that of the Debtor's non-filing spouse, less payroll deductions, of $4,850.45.  This amount included $1,000.00 of the non-filing spouse's Social Security income and was reduced by, among other things, a voluntary payroll deduction of $514.78 for a Section 403(b) retirement plan.  Expenses on the Debtor's

---

[1]The Debtor proposes to pay her only secured creditor, Truliant Federal Credit Union, through the Plan.

original Schedule J totaled $2,878.50, leaving net monthly income of $1,971.95.  On July 17,

2007, the Debtor filed amended Schedules I and J.  The Debtor's amended Schedule I, still

including the non-filing spouse's Social Security income and a voluntary payroll deduction for a

Section 403(b) retirement plan of $496.90,[2] reflects decreased income of $4,668.44.[3] The

amended Schedule J indicates that the Debtor's monthly expenses increased to $3,258.84.

However, this amount included a $345.00 installment payment for an automobile that was

already included in the proposed Plan payment.  With this adjustment, Schedule J reflects that

the Debtor has $1,774.60 available each month to pay her creditors.

The Debtor filed a Statement of Current Monthly Income and Calculation of

Commitment Period and Disposable Income, Official Form B22C (the "Form B22C"), as

required by Federal Rule of Bankruptcy Procedure 1007(b)(6).  The Form B22C showed that the

---

[2]Although the Trustee argues that the voluntary retirement contribution is not a mandatory deduction, and as such, is not a proper deduction, voluntary contributions to qualified retirement plans should not be considered when calculating disposable income.  In re Devilliers, 358 B.R. 849, 864 (Bankr. E.D. La. 2007); In re Njuguna, 357 B.R. 689, 690 (Bankr. D.N.H. 2006); In re Johnson, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006).

Schedule I also shows that the Debtor takes a voluntary payroll deduction for a Section 403(b) loan repayment, which also should not be considered for purposes of the Section 1325(b)(1)(B) test.  Prior to BAPCPA, it was widely held that, in the context of a chapter 13 plan confirmation, a debtor could not make voluntary payments toward a retirement savings plan in order to reduce her disposable income. E.g., In re Berry, No. 05-85079, slip op. at 5 (Bankr. C.D. Ill. Sept. 12, 2007) (2007 WL 2738313).  Now, Section 1322(f) provides that a Chapter 13 "plan may not materially alter the terms of a [401(k) loan] and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."  11 U.S.C. § 1322(f) (2005).  Therefore, a bankruptcy court may not consider such loan repayment amounts as disposable income in the context of evaluating the funding of a Chapter 13 plan.  In re Zaporski, 366 B.R. 758, 771 (Bankr. E.D. Mich. 2007); In re Nowlin, 366 B.R. 670, 672, n.1 (Bankr. S.D. Tex. 2007).

[3]This amount is net of payroll deductions totaling $2,307.05.

3

Debtor and her non-filing spouse were above median income earners for a household of two,[4] with a current monthly income ("CMI") of $6,219.70.[5]  The Debtor took $5,827.18 of deductions, which were determined pursuant to Section 707(b)(2)(A) of the Bankruptcy Code. In contrast to Schedule J, Line 58 of the Form B22C shows a monthly disposable income of $392.52.  The Debtor is required to pay sixty payments of $392.52 for a total of $23,551.20.

On July 18, 2007, the Plan came before the Court for confirmation.  The Trustee objected to confirmation (the "Objection") based on the disposable income requirement of Section 1325(b)(1)(B) of the Bankruptcy Code.   The confirmation hearing was continued to allow all parties to file briefs addressing whether the Social Security income received by the Debtor's spouse should be considered by the Court in evaluating whether the Debtor is contributing all of her disposable income to the Plan.  The Trustee and the Debtor timely filed briefs.

The net monthly income of the Debtor, as reflected on adjusted Schedule J, is $1,774.60,[6] which exceeds the proposed monthly plan payment of $750.00 by $1,024.60.  Form B22C shows a monthly disposable income of $392.52, which is less than the proposed monthly plan payment. Section 1325(b)(1)(B) requires a plan to provide that all of the Debtor's projected disposable income during the applicable commitment period be applied to pay claims of unsecured creditors.  The Trustee urges the Court to consider Schedules I and J, including the Social

---

[4]Schedule I indicates that the Debtor has no dependants.  The median family income for a family of two in North Carolina is $46,066.00.  The Debtor and her non-filing spouse earn an annualized current monthly income of $74,636.40.

[5]This amount does not include the $1,000.00 of Social Security income received by the Debtor's non-filing spouse each month.

[6]This amount includes the monthly Social Security income of the Debtor's non-filing husband of $1,000.00.

4

Security income of the Debtor's non-filing husband, to determine if the Plan complies with Section 1325(b)(1)(B).  The Trustee argues that the Debtor is not proposing to commit all of her projected disposable income to the Plan for the benefit of her unsecured creditors.  The Debtor argues that any consideration of her Schedules I and J for the purpose of determining projected disposable income would be contrary to clear legislative intent, would render the definition of "disposable income" irrelevant, and would be a strained interpretation of the statute.

## III.  DISCUSSION

The interpretation of any statute must begin with the language of the statute itself.[7]  If the text of a particular statutory provision is clear and unambiguous on its face, the text must assume overriding importance, and the court is to give effect to the plain meaning of the statute. However, the court should not construe the provision in a vacuum.[8]  It must look to the other

---

[7]As the Supreme Court has explained, "[i]n interpreting a statute a court should always turn to one cardinal canon before all others. . . .  [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citing United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241-242 (1989)).  Indeed, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"  Id.  The Supreme Court has also stated that "'when the statute's language is plain, the sole function of the courts'–at least where the disposition required by the text is not absurd–'is to enforce it according to its terms.'" Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (1942) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).

[8]The Supreme Court has instructed the federal courts to "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."  Kelly v. Robinson, 479 U.S. 36, 43 (1986).  The Court has rejected a singular focus on the text and punctuation of a provision, observing that "[a]long with punctuation, text consists of words living 'a communal existence,' in Judge Learned Hand's phrase, the meaning of each word informing the others and all in their aggregate tak[ing] their purpose from the setting in which they are used."  Hartford Underwriters, 530 U.S. at 7.  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997); Pak v. eCast Settlement Corp. (In re Pak), 378 B.R. 257, 269

relevant provisions of the statute to construe the statutory provision at issue in context. Hartford

Underwriters, 530 U.S. at 6-8.

A.      **The Statutory Framework**

Before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L.

No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), bankruptcy courts commonly used bankruptcy

schedules I and J as the primary source of evidence of a debtor's disposable income under

Section 1325 of the Bankruptcy Code. E.g., Pak, 378 B.R. at 262; In re Kibbe, 361 B.R. 302,

307 (B.A.P. 1st Cir. 2007). BAPCPA made significant changes to Section 1325(b), and since

then courts across the country have struggled to interpret the statute.

Section 1325 now provides that if the Chapter 13 trustee or an unsecured creditor objects

to confirmation of the plan, then the court may not approve the plan unless

> the plan provides that all of the debtor's projected disposable income to be
> received in the applicable commitment period beginning on the date that the first
> payment is due under the plan will be applied to make payments to unsecured
> creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (2005). The term "projected disposable income" was not changed by

BAPCPA. However, BAPCPA changed the definition of "disposable income" in Section

1325(b)(2). Pre-BAPCPA, "disposable income" for an individual debtor was defined as "income

---

(B.A.P. 9th Cir. 2007) (Klein, J., concurring); In re Lanning, No. 06-41037, slip op. at 3 (Bankr.
D. Kan. May 15, 2007) (2007 WL 1451999); In re Grant, 364 B.R. 656, 661 (Bankr. E.D. Tenn.
2007); In re Edmondson, 363 B.R. 212, 217 (Bankr. D.N.M. 2007); In re Zimmerman, No.
06-31086, slip op. at 2 (Bankr. N.D. Ohio Jan. 29, 2007) (2007 WL 295452). The structure of a
legislative scheme is a critical aid to understanding the purpose of a statute. And further, an
interpretation divorced from that purpose, abstracted from that structure, may well frustrate the
will of the legislature. John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387, 2408
n.75 (2003) (citing United States v. Fausto, 484 U.S. 439, 448 (1989), as "inferring purpose from
the structure of the Civil Service Reform Act").

received by the debtor and which is not reasonably necessary to be expended" for the maintenance or support of the debtor or a dependent. 11 U.S.C. § 1325(b)(2)(A) (1986). Post-BAPCPA, "disposable income" for an individual debtor is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended" for the maintenance or support of the debtor or a dependent. 11 U.S.C. § 1325(b)(2)(A) (2005).

The term "current monthly income" is completely new. For debtors that file schedule I, it is defined, in relevant part, as "the average monthly income from all sources that the debtor receives . . . , derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case." 11 U.S.C. § 101(10A)(A)(I) (2005).[9] Thus, "disposable income" is calculated historically, during the six months prior to bankruptcy. In re Purdy, 373 B.R. 142, 146 (Bankr. N.D. Fla. 2007) ("CMI . . . is a snapshot of the debtor's prepetition income.") (quoting Kibbe, 361 B.R. at 308). Congress chose not to rely on schedules I and J. Regardless of the utility of schedules I and J, which would seem to provide more realistic numbers,[10] that is Congress' choice to make. Pak, 378 B.R. at 263 (citing In re

---

[9]It also includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependants . . . but excludes benefits received under the Social Security Act . . . ." 11 U.S.C. § 101(10A)(B) (2005). A Chapter 13 debtor is required to file Form B22C, which serves, at least in part, to calculate a debtor's current monthly income. Interim Fed. R. Bankr. Proc. 1007(b)(6).

[10]Congress allowed debtors to change their six-month period in order to more accurately reflect their true financial circumstances. 11 U.S.C. § 101(10A)(ii). "If the debtor does not file a Schedule I, the debtor's 'current monthly income' may be determined using a period other than the six-month period immediately preceding his filing. The debtor's objective [is] to have his 'current monthly income' calculated based on a six-month period other then the six months immediately preceding his bankruptcy so that it more accurately reflects his financial condition." In re McQueen, No. 07-03011, slip op. at 2 (Bankr. E.D.N.C. 2007) (court struck debtor's original schedule I and Form B22C and allowed debtor to re-file both documents five months after the petition date); In re Musselman, 379 B.R. 583, 587 (Bankr. E.D.N.C. 2007) ("Congress

Kagenveama, No. 05-28079, slip op. at 5-7 (Bankr. D. Ariz. July 10, 2006) (2006 Bankr. Lexis 2759)).

BAPCPA also added Section 1325(b)(3), which provides that "[a]mounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income" that is above the median income[11] for a family of the same size.  11 U.S.C. § 1325(b)(3) (2005). Section 707(b)(2) sets forth a means test for determining whether a Chapter 7 case is presumptively abusive.  Subsection (A) provides that the

> debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides.

11 U.S.C. § 707(b)(2)(A)(ii)(I) (2005).[12]

---

gave the court some flexibility in determining the debtor's current monthly income in unusual circumstances. Specifically, 11 U.S.C. § 101(10A)(ii) allows the court to determine another date on which current monthly income will be determined if the debtor does not file Schedule I, and 11 U.S.C. Section 521(a)(1)(B)(ii) requires the filing of Schedule I unless the court orders otherwise.").

[11]BAPCPA creates two distinct equations for determining projected disposable income, one for above median income debtors and one for below median income debtors.  In re Stubbs, No. 07-61165, slip op. at 2 (Bankr. D. Mont. Dec. 6, 2007) (2007 WL 4287579); In re Austin, 372 B.R. 668, 674 (Bankr. D. Vt. 2007).  For the latter, the calculation of disposable income is the same as before BAPCPA, involving an analysis of schedules I and J.  E.g., In re Mullen, 369 B.R. 25, 31 (Bankr. D. Or.  2007); In re Miller, 361 B.R. 224, 228 (Bankr. N.D. Ala. 2007).

[12]Subsection (B), as will be discussed below, provides that the presumption of abuse may be rebutted if the debtor demonstrates "special circumstances . . . that justify additional expenses or adjustments of current monthly income for which there is no alternative."  11 U.S.C. § 707(b)92)(B) (2005).

**B.      Determining Income for Above Median Income Debtors**

As has been noted by several courts, the proper interpretation of "projected disposable

income" has been "hotly debated," Austin, 372 B.R. at 574, creating a "murky stew of

conflicting legal opinions."  In re Green, 378 B.R. 30, 33 (Bankr. N.D.N.Y. 2007).  Some courts

identify two lines of cases: one line interprets "projected" as an adjective modifying "disposable

income"; the other views the phrase "projected disposable income" as a discrete term of art that

has a meaning distinct from the statutory definition of disposable income.  E.g., Green, 378 B.R.

at 33; Austin, 372 B.R. at 675.  Others identify a third line of cases that

> use[] the number on the debtor's B22C Form as the "projected disposable income"
> unless the debtor or some other party can show that there has been a substantial
> change in circumstances such that the figures on the B22C Form are not
> commensurate with a fair projection of the debtor's budget in the future.

In re Ross, 375 B.R. 437, 441-42 (Bankr. N.D. Ill. 2007) (citing In re Nance, 371 B.R. 358, 364

(Bankr. S.D. Ill. 2007)).  The issue is created, at least in part, by the lack of a definition of

"projected disposable income" and the lack of a clear statutory direction for computing projected

disposable income.  Ross, 375 B.R. at 443.

1.      The Minority Interpretation: Alexander and Its Progeny

Over twenty different courts, beginning with the Alexander court,[13] have adopted what

---

[13]In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006), is often cited along with Alexander
as a case that espouses the minority view.  However, many courts have correctly noted that Barr
addressed the issue of good faith under Section 1325(a)(3), not the definition of projected
disposable income under Section 1325(b)(1)(B).  See In re Pak, 343 B.R. 239, 243 (Bankr. N.D.
Cal. 2006), aff'd, 378 B.R. 257 (9th Cir. BAP 2007); In re Foster, No. 05-50448, slip op. at 6
(Bankr. N.D. Ind. Sep 11, 2006) (2006 WL 2621080); In re McPherson, 350 B.R. 38, 47 (Bankr.
W.D. Va. Jul 31, 2006); In re Fuller, 346 B.R. 472, 478 n.1 (Bankr. S.D. Ill. 2006).  To the
extent that Barr stands for the minority view, courts in the majority have rejected it.  See, e.g., In
re LaPlana, 363 B.R. 259, 265 (Bankr. M.D. Fla. 2007).

has become the minority view.  These courts hold that "projected disposable income" is the disposable income calculated on Form B22C extrapolated over the applicable commitment period.  See, e.g., In re Frederickson, 375 B.R. 829, 835 (B.A.P. 8th Cir. 2007); In re Alexander, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006).

Courts that have adopted the minority view make several statutory construction arguments in support of their interpretation of Section 1325(b).  The most common argument is that Section 1325(b)(3) provides that "[a]mounts reasonably necessary to be expended under paragraph (2) [which defines 'disposable income'] shall[14] be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if " the debtor's income is above the median income, which forces a court to use the calculation of CMI provided by Form B22C to determine disposable income.  See Stubbs, No. 07-61165, slip op. at 3; In re Williams, No. 07-00396, slip op. at 5 (Bankr. E.D.N.C. Oct. 25, 2007); In re Berger, 376 B.R. 42, 47-48 (Bankr. M.D. Ga. 2007); In re Rezentes, 368 B.R. 55, 59 (Bankr. D. Hawaii 2007); Miller, 361 B.R. at 234; In re Tuss, 360 B.R. 684, 695 (Bankr. D. Mont. 2007); In re Tranmer, 355 B.R. 234, 246 (Bankr. D. Mont. 2006); In re Farrar-Johnson, 353 B.R. 224, 228 (Bankr. N.D. Ill. 2006); In re Guzman, 345 B.R. 640, 643-44 (Bankr. E.D. Wis. 2006).  As is discussed below, Section 1325(b)(3) addresses the debtor's expenses, not her income.

Several courts have argued that the placement of the definition of "disposable income" in Section 1325(b)(2) indicates that current monthly income, which is included within the "disposable income" definition and defined by Section 101(10A), should be used in calculating "projected disposable income."  Frederickson, 375 B.R. at 833; Musselman, 379 B.R. at 587;

---

[14]Emphasis added.

10

<u>Green</u>, 378 B.R. at 36; <u>Nance</u>, 371 B.R. at 365; <u>In re Kolb</u>, 366 B.R. 802, 815 (Bankr. S.D. Ohio 2007); <u>Miller</u>, 361 B.R. at 235; <u>Tranmer</u>, 355 B.R. at 242, 244-45; <u>In re Rotunda</u>, 349 B.R. 324, 331 (Bankr. N.D.N.Y. 2006); <u>Kagenveama</u>, No. 05-28079, slip op. at 3.

Some courts argue that if "disposable income" is not linked to "projected disposable income," then it is just a meaningless, floating definition.  <u>Green</u>, 378 B.R. at 36; <u>Austin</u>, 372 B.R. at 677; <u>Tuss</u>, 360 B.R. at 692; <u>Tranmer</u>, 355 B.R. at  242; <u>Kagenveama</u>, No. 05-28079, slip op. at 3; <u>Alexander</u>, 344 B.R. at 749.  They argue that the majority interpretation renders Section 1325(b)(2) superfluous because that subsection states the definition of "disposable income" and the only other reference to "disposable income" in that section is in the phrase "projected disposable income," so if it does not apply to that phrase, then it has no application at all. <u>Berger</u>, 376 B.R. at 47; <u>Kolb</u>, 366 B.R. at 816.  However, the majority courts counter that the definition of "current disposable income" in Section 101(10A) is not superfluous because Section 101(10A) provides the source of payment, excludes certain income, and provides a starting point for the payment required by Section 1325(b)(1)(B).  <u>In re Arsenault</u>, 370 B.R. 845, 851 (Bankr. M.D. Fla. 2007); <u>In re Hardacre</u>, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006).

A few courts have noted that Congress provided no definition of "projected disposable income"; these courts argue that had Congress intended its meaning to be different than "disposable income," it could have provided a separate definition.  <u>Frederickson</u>, 375 B.R. at 833; <u>Ross</u>, 375 B.R. at 442; <u>Austin</u>, 372 B.R. at 677; <u>Nance</u>, 371 B.R. at 365.  However, ignoring the word "projected" violates the "time-honored tenet that '[a]ll words and provisions of a statute are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous.'"

11

Lopez-Soto v. Hawayek, 175 F.3d 170, 174 (1st Cir.1999) (quoting United States v. Ven-Fuel,
Inc., 758 F.2d 741, 751-52 (1st Cir. 1985); United States v. Ahlers, 305 F.3d 54, 58 (1st Cir.
2002)).

Some minority courts explain that "projected" simply means "multiplied," meaning that
the debtor's disposable income is extrapolated over the life of the plan.  See, e.g., Alexander, 344
B.R. at 749 ("[I]n order to arrive at "projected disposable income," one simply takes the
calculation mandated by § 1325(b)(2) and does the math.")**.**  The majority courts counter that
Congress used the word "multiplied" when the context so demanded;[15] therefore "projected" is
clearly not a synonym for "multiplied."  Kibbe, 361 B.R. at n.9; Purdy, 373 B.R. at 149.

One of the primary criticisms of the minority position is that it does not take into
consideration the actual income of the debtor on the date of petition.  Historical CMI may have
no relationship to the debtor's actual income during the course of the Chapter 13 case.  Pak, 378
B.R. at 263; In re Plumb, 373 B.R. 429, 435-36 (Bankr. W.D.N.C. 2007); In re Upton, 363 B.R.
528, 533 (Bankr. S.D. Ohio 2007); Edmondson, 363 B.R. at 214; In re Zimmerman, No.
06-31086, slip op. at 3 (Bankr. N.D. Ohio Jan. 29, 2007) (2007 WL 295452).  The debtor's
actual income may be considerably better or worse than that reflected by the debtor's CMI.
Kolb, 366 B.R. at 810.  Several courts have simply rejected the use of historical CMI in
determining compliance with Section 1325(b)(1)(B).  See, e.g., Kibbe, 361 B.R. at 312 (if
"currently monthly income" is not true to DR's actual current income, then the court should use
the latter and avoid the artificial measure); Purdy, 373 B.R. at 147 ("[A] historically-oriented

---

[15]See, e.g., 11 U.S.C. § 707(b)(2)(A)(I) ("multiplied by 60"); 11 U.S.C. § 1325(b)(3)
("multiplied by 12").

calculation," based on income over six months prior to bankruptcy, "is not necessarily proper for determining payments under a Chapter 13 Plan, which continues forward over a three to five year period.").   Moreover, attaching the word "projected" to a historical calculation assumes that the debtor's circumstances will not change, but experience teaches otherwise.  Id.

Another primary criticism of the minority interpretation is that it denies Chapter 13 relief for otherwise qualified debtors, while it allows other debtors to avoid paying their creditors when they have an actual ability to do so.  Pak, 378 B.R. at 265 (the plain meaning interpretation would allow debtors to not pay when they could and would prevent confirmation when a debtor has had a decrease in income; this creates problems on both ends); Purdy, 373 B.R. at 151 (minority view offends the fresh start policy of the Code by denying bankruptcy relief to debtors who are otherwise eligible for Chapter 13); Arsenault, 370 B.R. at 850; Edmondson, 363 B.R. at 218; Devilliers, 358 B.R. at 858-59; In re Edmunds, 350 B.R. 636, 647 (Bankr. D.S.C. 2006); In re Chriss-Price, 376 B.R. 648, 652 (Bankr. M.D. Tenn. 2006); Hardacre, 338 B.R. at 722.  Some courts conclude that the minority view results in a windfall for debtors whose incomes have increased and a detriment to debtors whose incomes have decreased.  Kibbe, 361 B.R. at 314; In re Warren, No. 07-30721, slip op. at 2 (Bankr. M.D. Ala. Sept. 6, 2007) (2007 WL 2683837); In re Mancl, 375 B.R. 514, 517 (Bankr. W.D. Wis. 2007) (minority view produces arbitrary results that penalize debtors and creditors), rev'd, No. 07-0582, slip op. 2-3 (W.D. Wis. Feb. 12, 2008) (2008 WL 370621); Lanning, No. 06-41037, slip op. at 6 & n.25; In re Slusher, 359 B.R. 290, 298 (Bankr. D. Nev. 2007) (minority view is a detriment to debtors and creditors).  It is doubtful

13

that such results are what Congress intended,[16] as they appear to be just the opposite of what is

indicated by the scant legislative history.[17]

Still another criticism is that the minority interpretation of Section 1325(b)(1) effectively

rewrites the section without Congressional approval.  In re Briscoe, 374 B.R. 1, 10 (Bankr. D.

Col. 2007).  "Nothing in the text or legislative history of BAPCPA suggests that Congress

intended to abandon the principles that led to the creation of the projected disposable income test

twenty-three years ago."  Id. at 11; see Slusher, 359 B.R. at 296 (both pre- and post-BAPCPA,

Section 1325(b)(2) contained the phrase "projected disposable income," which indicates that

Congress intended for the term to continue to mean income in the future).

2.    The Majority Interpretation - Hardacre, Jass, and Their Progeny

Courts in the majority consider schedule I to determine if above median income debtors

meet the Section 1325(b)(1)(B) test.  Berger, 376 B.R. at 46.  They interpret the phrase

"projected disposable income" as a discrete term of art that has a meaning distinct from the

definition of "disposable income."  "It is generally presumed that Congress acts intentionally and

purposely when it includes particular language in one section of a statute but omits it in another."

---

[16]Kevin R. Anderson, Disposable Income v. Projected Disposable Income: Identical
Twins or Distant Relatives? 18 NACTT Quarterly 12, 17 (2006) ("Could Congress have deemed
such debtors worthy of Chapter 13 relief even though they would pay a lesser amount to
unsecured creditors?").

[17]Allowing debtors with surplus income under schedules I and J to confirm plans that do
not apply that surplus to unsecured creditors is at odds with the Congressional intent for debtors
to pay creditors as much as they can afford.  In re Brady, 361 B.R. 765, 773 (Bankr. D.N.J.
2007); Tuss, 360 B.R. at 693; Tranmer, 355 B.R. at 244; Rotunda, 349 B.R. at 326-27; In re
Barraza, 346 B.R. 724, 729 (Bankr. N.D. Tex. 2006); Guzman, 345 B.R. at 641, 642.  In fact, it
would produce results at odds with Congressional intent and common sense.  Pak, 378 B.R. at
266; Kibbe, 361 B.R. at 314; Warren, No. 07-30721, slip op. at 2; Arsenault, 370 B.R. at 850;
Lanning, No. 06-41037, slip op. at 5.

14

Lopez-Soto, 175 F.3d at 174 (quoting BFP v. Resolution Trust Corp., 511 U.S. 531, 537 (1994)); Kibbe, 361 B.R. at 312-13; LaPlana, 363 B.R. at 265.  The fact that the term "disposable income" is defined in Section 1325(b)(2) but does not define the term "projected disposable income" indicates that Congress intended to differentiate between "disposable income" found in subsection (2) and "projected disposable income" found in subsection (1). Slusher, 359 B.R. at 296.  This Court agrees with the majority view that "projected disposable income" has a meaning distinct from "projected income."

Several courts have concluded that the retention by BAPCPA of the word "projected" in Section 1325(b)(1)(B) is ambiguous.  See, e.g., Pak, 378 B.R. at 263-64; Arsenault, 370 B.R. at 850.  Given the number of conflicting, well-reasoned opinions on both sides of the issue, this conclusion is hardly surprising.  This Court concludes that the meaning of "projected disposable income" is not plain.[18]  "Projected disposable income," as it appears in Section 1325(b)(1)(B), is an ambiguous phrase that is subject to two interpretations, so this Court will look to the language of the statute to determine Congressional intent.

When a statute is ambiguous, courts should not adopt a construction which would lead to an absurd result.  Gen. Motors Corp. v. Darling's, 444 F.3d 98, 108 (1st Cir. 2006).  As the Supreme Court explained in Public Citizen v. U.S. Dept. of Justice, 491 U.S. 440 (1989):

---

[18]See also In re Sawdy, 362 B.R. 898, 904 (Bankr. E.D. Wis. 2007)("Is the meaning of [§ 707(b)(2)(A)(ii)(I)] so plain, so clear, so unambiguous, that the Court need look no further to determine its meaning? The question seems ironic in light of the status of the case law. If the language of § 707(b)(2)(A)(ii)(I), when given its ordinary and literal meaning, is plain, clear and unambiguous, then how could six courts have interpreted it one way and five courts have interpreted it in exactly the opposite way? Doesn't the concept of 'plain' meaning carry with it the implication that the same meaning would be 'plain'--ordinary, literal and obvious--to every reader?").

Where the literal reading of a statutory term would "compel an odd result," <u>Green v. Bock Laundry Machine Co.</u>, 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989), we must search for other evidence of congressional intent to lend the term its proper scope. See also, e.g., <u>Church of the Holy Trinity</u>, <u>supra</u>, [v. U.S.] 143 U.S., [457]at 472, 12 S.Ct., [511]at 516 [(1892)]; <u>FDIC v. Philadelphia Gear Corp.</u>, 476 U.S. 426, 432, 106 S.Ct. 1931, 1935, 90 L.Ed.2d 428 (1986). "The circumstances of the enactment of particular legislation," for example, "may persuade a court that Congress did not intend words of common meaning to have their literal effect." <u>Watt v. Alaska</u>, 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Even though, as Judge Learned Hand said, "the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing," nevertheless "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." <u>Cabell v. Markham</u>, 148 F.2d 737, 739 (CA2), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." <u>Boston Sand & Gravel Co. v. United States</u>, 278 U.S. 41, 48, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1928) (Holmes, J.). See also <u>United States v. American Trucking Assns., Inc.</u>, 310 U.S. 534, 543-544, 60 S.Ct. 1059, 1063-64, 84 L.Ed. 1345 (1940) ("When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be 'no rule of law' which forbids its use, however clear the words may appear on 'superficial examination' ") (citations omitted).

<u>Id</u>. at 454-55; <u>Watt v. Alaska</u>, 451 U.S. 259, 266 (1981) ("the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect.") (citations omitted). Thus, a "[c]ourt's inquiry should end with the language of a statute unless (1) a literal application of the statutory language would be at odds with the manifest intent of the legislature; (2) a literal application of the statutory language would produce an absurd result; or (3) the statutory language is ambiguous." <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 536 (2004);

16

Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982); In re Jass, 340 B.R. 411, 415

(Bankr. D. Utah 2006)(citing Ron Pair , 489 U.S. at 242).

For the reasons stated above, several courts have concluded that the minority

interpretation of Section 1325(b) renders an absurd result.  See Purdy, 373 B.R. at 150 ("the

'literal' application of the statutory language advocated by the 'multiplier' interpretation

produces an absurd result"); Lanning, No. 06-41037, slip op. at 6 ("This Court will not adopt a

reading of the statute that results in this absurd result-a result that would effectively preclude

Chapter 13 relief for those most in need."); Edmondson, 363 B.R. at 217 ("taking a plain

meaning approach which results in strict adherence to Form B22C would be contrary to the

structure and purpose of the Bankruptcy Code as a whole and would lead to absurd results");

Devilliers, 358 B.R. at 858 ("To interpret these amendments mechanically leads to absurd

results."); contra In re Hanks, 362 B.R. 494, 502 (Bankr. D. Utah 2007) ("a harsh or even

illogical result is not the same thing as an absurd result").  Even courts in the minority admit that

a strict, mechanical approach to Section 1325(b) leads to impractical results, Ross, 375 B.R. at

443; inequitable results, Berger, 376 B.R. at 48; harsh and unfair results, Kolb, 366 B.R. at 814;

and results that do not "sit well," Rotunda, 349 B.R. at 332.  When the literal reading of a statute

would compel an odd result, a court must look to other evidence of Congressional intent to lend

the term its proper scope.  Kibbe, 361 B.R. at 313; Purdy, 373 B.R. at 150; Grant, 364 B.R. at

661; Jass, 340 B.R. at 416.

It is axiomatic that a court must give meaning to every word in a statute, so as to avoid

surplusage if possible.  A court should not construe a statute in a way that renders a word or

phrase meaningless.  Arsenault, 370 B.R. at 849; LaPlana, 363 B.R. at 265; Devilliers, 358 B.R.

17

at 857-58; Casey, 356 B.R. at 524; Edmunds, 350 B.R. at 642; Jass, 340 B.R. at 415.  Neither the

word "projected" nor the term "projected disposable income" is defined by the Code, but the

addition of "projected" to "disposable income" must differentiate it from "disposable income" or

it would have no meaning.  Pak, 378 B.R. at 264; Kibbe, 361 B.R. at 312; In re McCarty, 376

B.R. 819, 824-25 (Bankr. N.D. Ohio 2007); Briscoe, 374 B.R. at 10 & n.12; Purdy, 373 B.R. at

147;  Arsenault, 370 B.R. 849-50; Mullen, 369 B.R. at 31; In re Watson, 366 B.R. 523, 531

(Bankr. D. Md. 2007); Grant, 364 B.R. at 666; Devilliers, 358 B.R. at 858; In re Riggs, 359 B.R.

649, 652 (Bankr. E.D. Ky. 2007); In re Teixeira, 358 B.R. 484, 486 (Bankr. D.N.H. 2006);

Casey, 356 B.R. at 523; In re Grady, 343 B.R. 747, 750 (Bankr. N.D. Ga. 2006); In re Risher,

344 B.R. 833, 836 (Bankr. W.D. Ky. 2006); Chriss-Price, 376 B.R. at 651; Jass, 340 B.R. at 415,

418; Hardacre, 338 B.R. at 723.[19]  If Congress intended "disposable income" and "projected

disposable income" to mean the same thing, then it would have used the same phrase in both

subsections of Section 1325(b).  Purdy, 373 B.R. at 149.

     The word "projected" is forward looking.[20]  It means to calculate, estimate or predict

_____

    [19]The minority courts argue that equating "projected disposable income" with "disposable income" does not make "projected" meaningless because "projected" merely explains the treatment of "disposable income."  Under Section 1325(b)(2), disposable income is calculated and projected or extrapolated over the term of the plan.  Frederickson, 375 B.R. at 833-34; Musselman, 379 B.R. at 588; Ross, 375 B.R. at 442; Berger, 376 B.R. at 47; Kolb, 366 B.R. at 816.  This argument has been addressed above.

    [20]It was interpreted that way pre-BAPCPA.  Pak, 378 B.R. at 264 (citing Anderson v. Satterlee (In re Anderson), 21 F.3d 355, 357 n.5 (9th Cir. 1994)).  Words and phrases that have received judicial construction before enactment are to be understood according to that construction, unless the statute clearly requires them to have a different meaning.  See Finley v. United States, 490 U.S. 545, 554 (1989) (quoting Anderson v. Pacific Coast S.S. Co., 225 U.S. 187, 199 (1912)) ("Under established canons of statutory construction, 'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'").

something in the future based on present data or trends.  See, e.g., Pak, 378 B.R. at 264; Kibbe, 361 B.R. at 307-308; Briscoe, 374 B.R. at 8; Purdy, 373 B.R. at 146; Arsenault, 370 B.R. at 850; In re Meek, 370 B.R. 294, 299 (Bankr. D. Idaho 2007).  A future-oriented approach is consistent with the use of schedule I to determine the debtor's compliance with Section 1325(b)(1)(B).  See Slusher, 359 B.R. at 297 ("disposable income" refers to the past and "projected disposable income" refers to the future); Teixeira, 358 B.R. at 486 (same); In re Foster, No. 05-50448, slip op. at n.10 (same); Chriss-Price, 376 B.R. at 651 (same); but see In re Bardo, 379 B.R. 524, 526-27 (Bankr. M.D. Pa. 2007) (BAPCPA specifically amended the definition of disposable income in 1325(b)(2) from income received by the debtor and not necessary for the maintenance and support of the debtor or his dependent, which shows a conscious choice by Congress to move away from a forward-looking assessment to a historical assessment).

A forward-looking approach is also supported by other language in Section 1325(b)(1)(B).  For example, the phrase "to be received" indicates that it refers to income that will be received in the future.  See Warren, No. 07-30721, slip op. at 2; Purdy, 373 B.R. at 147; Arsenault, 370 B.R. at 850; Lanning, No. 06-41037, slip op. at 5; Mullen, 369 B.R. at 32; Riggs, 359 B.R. at 652; Edmunds, 350 B.R. at 644, 646; In re Demonica, 345 B.R. 895, 900 (Bankr. N.D. Ill. 2006); Hardacre, 338 B.R. at 723; but see Berger, 376 B.R. at 47-48 ("to be received" refers to payments that will be received throughout the plan; it is not inconsistent with the minority view); Kolb, 366 B.R. at 816 (same).  Also, treating "projected" as future-oriented is consistent with the requirement of Section 1325(b)(1) that "projected disposable income" be applied "as of the effective date of the plan."  Pak, 378 B.R. at 264-65; Lanning, No. 06-41037, slip op. at 5.

19

The phrase "effective date of the plan" means the date of confirmation, so if the debtor's "projected disposable income" is to be determined at confirmation, which is months <u>after</u> the petition date, then it is difficult to justify tying that determination to the debtor's income for the six months prior to bankruptcy.  <u>Pak</u>, 378 B.R. at 265; <u>Arsenault</u>, 370 B.R. at 850; <u>Riggs</u>, 359 B.R. at 652; <u>Hardacre</u>, 338 B.R. at 723.  Lastly, BAPCPA did not alter the requirement in Section 1322(a)(1) that a debtor "provide for the submission of all or such portion of <u>future</u> earnings or other <u>future</u> income of the debtor to the supervision and control of the trustee."  11 U.S.C. § 1322(a)(1) (emphasis added); <u>Pak</u>, 378 B.R. at 262 ("Congress did not alter either the term "projected disposable income" in § 1325(b)(1)(B) or the requirement of § 1322(a)(1) that the debtor commit 'such portion of <u>future earnings or other future income of the debtor to the supervision and control of the trustee</u> as is necessary for the execution of the plan.'") (emphasis in original).

The term "projected disposable income" appears in five other places in the Code, none of which define it, and only one of which (i.e., Section 1129(a)(15)(B)) refers back to the definition of "disposable income" in Section 1325(b)(2).  <u>Slusher</u>, 359 B.R. at 297.  <u>But see</u> <u>Frederickson</u>, 375 B.R. at 834 (reference in Section 1129(a)(15)(B) to Section 1325(b)(2) shows that they are the same concept).  On the other hand, the term "disposable income," without the word "projected," is used in four other Code sections, two of which incorporate the definition provided in Section 1325(b)(2).[21]  <u>Slusher</u>, 359 B.R. at 297.  The use of both "projected disposable

---

[21]<u>See</u> 11 U.S.C. § 527(a)(2)(c) ("disposable income (determined in accordance with section 707(b)(2)"); 11 U.S.C. § 527(c)(1) ("disposable income in accordance with section 707(b)(2)"); 11 U.S.C. § 541(b)(7) ("disposable income, as defined in section 1325(b)(2)"); 11 U.S.C. § 1322(f) ("'disposable income' under section 1325").

income" and "projected income" in different Code sections indicates that these phrases have two different meanings. Id.

The minority interpretation of Section 1325(b)(1)(B) would render two sections of the Bankruptcy Code superfluous. Pursuant to Section 1323(a), which was not changed by BAPCPA, a debtor can propose a plan modification before confirmation. However, if Section 1325(b)(2) is treated as an unalterable multiplier of disposable income as determined by Form B22C, then such a modification would be prohibited. Pak, 378 B.R. at 267; Mullen, 369 B.R. at 34; Zimmerman, No. 06-31086, slip op. at 6; Grady, 343 B.R. at 752. Likewise, if Chapter 13 plan payments were conclusively fixed by "disposable income" calculated pursuant to Section 1325(b)(2), then the modification of such payments after confirmation would be impermissible, and Section 1329(a)(1) would be meaningless. McCarty, 376 B.R. at 825; Briscoe, 374 B.R. at 10; Purdy, 373 B.R. at 149; Mullen, 369 B.R. at 32; Grady, 343 B.R. at 752. Such a result also conflicts with pre-BAPCPA controlling precedent in the Fourth Circuit, which allows the post-confirmation modification of Chapter 13 plans upon a showing of an unanticipated, substantial change in circumstances. Murphy, 474 F.3d at 149; In re Arnold, 869 F.2d 240, 243 (4th Cir. 1989); Butler, 174 B.R. at 47.

Generally, courts may look to pre-amendment case law as informative when construing the Code. Dewsnup v. Timm, 502 U.S. 410, 419 (1992). In Dewsnup, the Supreme Court cited pre-1978 Code precedent to construe the Code and explained that "[w]hen Congress amends the bankruptcy laws, it does not write on a clean slate." Id. Therefore, pre-BAPCPA case law

remains instructive in construing the Code post-BAPCPA.[22]  Pre-BAPCPA practice supports the

majority view because cases decided before BAPCPA held that the definition of disposable

income under Section 1325(b)(2) was merely a starting point.  Jass, 340 B.R. at 416-17 (citing

Anderson, 21 F.3d at 357).

3.        Adjustments to Income

Some courts hold that the calculation of disposable income for above median income

debtors is tied not only to Section 707(b)(2)(A) under the means test, but also to Section

707(b)(2)(B), pursuant to which a court may consider special circumstances that make such

adjustments to income necessary and reasonable.  See Pak, 378 B.R. at 270-71 (Klein, J.,

concurring); Ross, 375 B.R. at 443; Lanning, No. 06-41037, slip op. at n.32; Hanks, 362 B.R. at

501-502; Miller, 361 B.R. at 227; Jass, 340 B.R. at 418-19.  Thus, if special circumstances are

found under Section 707(b)(2)(B), then the debtor's income can be adjusted without the need to

consider schedule I.  Pak, 378 B.R. at 270-71 (Klein, J., concurring); Ross, 375 B.R. at 443;

Lanning, No. 06-41037, slip op. at n.32; Hanks, 362 B.R. at 501-502; Miller, 361 B.R. at 227;

Jass, 340 B.R. at 419.  Although this interpretation of the statue appears to afford a way to adjust

---

[22]Courts should consider a statute in the context of prior case law.  In re Weinstein, 272
F.3d 39, 43-47 (1st Cir. 2001).  In many instances a statute is enacted in reaction to prior case
law.  In this regard, the statute may have been enacted simply to codify the prior case law.
Section 105(a) of the Bankruptcy Code: Does it provide authority to override, modify, or temper
provisions of the Bankruptcy Abuse, Prevention and Consumer Protection Act of 2005?, 2006
Am. Bankr. Inst. N.E. Conf. (available at 060713 ABI-CLE 513).  Conversely, the statute may
have been enacted to effectuate a substantial change in the existing law.  Id.  In construing a
statute that follows prior case law, the First Circuit Court of Appeals held that the proper tenet of
statutory construction is to assume that the legislature meant to preserve some measure of
continuity with the earlier cases.  Weinstein, 272 F.3d at 46.  Thus, except to the extent that the
legislature suggests, through language in the statute, an intent to depart from prior law, a court
construing a new statute must assume that the legislature intended to preserve the existing rule of
law.  Id.

the income of the above median income debtor in "special circumstances," unfortunately it has a

fatal flaw.  The <u>Briscoe</u> court explains:

> Section 1325(b)(3), which governs the calculation of "[a]mounts
> reasonably necessary to be expended under [§ 1325(b)(2) ]," provides that such
> expenses "shall be determined in accordance with subparagraphs (A) and (B) of
> section 707(b)(2)," 11 U.S.C. § 1325(b)(3) (emphasis added). But this
> incorporation of the "special circumstances" exception only applies to the
> expense side of the "disposable income" equation.  Nothing in § 1325(b)(2), or
> § 1325(b) in general, permits a court to consider "special circumstances" that
> would lead to "adjustments of current monthly income" as contemplated by
> § 707(b)(2)(B).

<u>Briscoe</u>, 374 B.R. at 17.  A close examination of the statute reveals that <u>Briscoe</u> is correct.

Section 1325(b)(2) defines disposable income as "current monthly income received by the

debtor . . . less <u>amounts reasonably necessary to be expended</u>" for the maintenance or support of

the debtor.  11 U.S.C. § 1325(b)(2) (emphasis added).  Section 1325(b)(3) provides: "<u>Amounts</u>

<u>reasonably necessary to be expended</u> under paragraph (2) . . . shall be determined in accordance

with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has" above median income.

11 U.S.C. § 1325(b)(3) (emphasis added).  The phrase "amounts reasonably necessary to be

expended" can refer only to the debtor's expenses, not to her income.  In spite of the fact that

Section 707(b)(2)(B) applies to "additional expenses or adjustments of current monthly income"

for purposes of the means test, Section 1325(b)(3) is clearly directed to the debtor's expenses, so

only those portions of Section 707(b)(2)(B) that apply to expenses are incorporated into Section

1325(b).

This analysis provides further support for the position that Congress intended for courts

to consider schedule I in determining compliance with Section 1325(b)(1)(B).  CMI is based on

the debtor's actual income over the six-month period prior to bankruptcy.  11 U.S.C. §

101(10A).  If the debtor has special circumstances concerning her income, such as a serious medical condition or active military service, that make the debtor's CMI substantially different from the income shown on schedule I, then the court should consider schedule I income to determine whether the debtor complies with the Section 1325(b)(1)(B) test.  Since the debtor's current income, as shown on schedule I, already is being considered, there was no need for Congress, in Section 1325(b), to reference Section 707(b)(2)(B) for purposes of adjustments to income, only to expenses.  Briscoe, 374 B.R. at n. 19 ("The only 'special circumstances' that could 'justify additional expenses' would be circumstances not contemplated by § 707(b)(2)(A), which would not be included in a forecast of the debtor's monthly expenses if the debtor were limited to the expenses specified by § 707(b)(2)(A).  It was therefore necessary for Congress to reference § 707(b)(2)(B) in § 1325(b)(3) (specifying what are reasonable expenses), but not in § 1325(b)(2).").

4.      The Legislative History

If the meaning of a statutory provision is ambiguous, then the court should turn to the legislative history of the statutory provision to discern its meaning.  In re Bankvest Capital Corp., 360 F.3d 291, 298 (1st Cir. 2004).  Relying on legislative history can be very difficult at times.[23]  In regard to the statutory changes made by BAPCPA, "the Congressional record is largely silent because the only records available are little more than 'a gloss of the statutory

---

[23]In Lamie, 540 U.S. 526, the Supreme Court recognized the perils of analyzing legislative intent as an aid to statutory construction.  "Though we find it unnecessary to rely on the legislative history behind the 1994 enactment of §330(a)(1), we find it instructive that the history creates more confusion than clarity about the congressional intent."  Id. at 539.  After a thorough analysis of the legislative history, the Lamie court concluded that "[t]hese uncertainties illustrate the difficulty of relying on legislative history here and the advantage of our determination to rest our holding on the statutory text."  Id. at 542.

language of BAPCPA.'"  <u>Jass</u>, 340 B.R. at 416 (quoting <u>In re McNabb</u>, 326 B.R. 785, 789

(Bankr. D. Ariz. 2005)).  Although the legislative history of Section 1325 is generally not

helpful,[24] the legislative history surrounding the enactment of BAPCPA paints a clear picture of

legislative intent.  <u>Kibbe</u>, 361 B.R. at 314.  "The heart of [BAPCPA's] consumer bankruptcy

reform consists of the implementation of an income/expense screening mechanism ('needs-based

bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors

the maximum they can afford."  <u>Id</u>. (citing H.R. Rep. No. 109-31, at 2 (2005)).  Many courts

have noted a clear Congressional intent in BAPCPA to require debtors to pay back as much as

they could afford.  <u>See</u> <u>Pak</u>, 378 B.R. at 265; <u>Briscoe</u>, 374 B.R. at 11; <u>Arsenault</u>, 370 B.R. at

850; <u>Meek</u>, 370 B.R. at 304 & n.31; <u>Brady</u>, 361 B.R. at 773; <u>Zimmerman</u>, No. 06-31086, slip op.

at 6; <u>Edmunds</u>, 350 B.R. at n.9.

     5.     Policy Considerations

     To aid in discerning the meaning of a statutory provision, a court may consider the policy

underlying the statutory provision and the statute itself.  <u>Weinstein</u>, 272 F.3d at 46.  By

understanding the policy that the statute is attempting to achieve, resolving ambiguities can be

made easier.  <u>Id</u>.  But when a court considers the congressional policies underlying the statute,

the court must be careful not to "impose its own views of the proper public policy in place of

those of the legislature."  <u>Id</u>.

     The fundamental policy of the Bankruptcy Code is to allow the debtor a fresh start.

---

[24]<u>Nance</u>, 371 B.R. at 366 ("Without more, this Court finds that the legislative history regarding § 1325(b) is an inappropriate means for determining what Congress meant by the phrase 'projected disposable income' and certainly does not support overriding the statute's plain meaning."); <u>Berger</u>, 376 B.R. at n.3 ("legislative history of BAPCPA has limited value"); <u>Kolb</u>, 366 B.R. at 808 ("legislative history . . . is of very limited practical help").

Grogan v. Garner, 498 U.S. 279, 287 (1991).  BAPCPA was enacted "to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors."  Purdy, 373 B.R. at 148; H.R. Rep. 109-31(I), at 2 (2005), as reprinted in 2005 U.S.C.C.A.N 88, 89.  For creditors, reforms were meant to "respond to many of the factors contributing to the increase in consumer bankruptcy filings, such as lack of personal financial accountability, the proliferation of serial filings, and the absence of effective oversight to eliminate abuse in the system."  H.R. Rep. 109-31(I), at 2 (2005), as reprinted in 2005 U.S.C.C.A.N 88, 89.  Regarding consumer bankruptcy, the reforms were intended to ensure that debtors repay creditors the maximum they can afford.  Provisions were also intended to deter serial and abusive bankruptcy filings.  Id.  The majority interpretation of Section 1325(b)(1)(B) fosters the fresh start policy of the Code because it allows debtors who otherwise quality for Chapter 13 relief to confirm their plans.  Jass, 340 B.R. at 418-19.

Many courts in the minority have argued that Section 707(b)(2) was meant by Congress to limit judicial involvement and discretion by making mechanical the determination of abuse under Section 707(b), and that the incorporation of the means test into Section 1325(b)(3) is meant to have the same mechanical effect.  See, e.g., Austin, 372 B.R. at 676-77; Berger, 376 B.R. at 48; Kolb, 366 B.R. at 812; In re Winokur, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007).  Other courts have simply noted that Congress meant to foster uniformity by incorporating the means test into Section 1325(b)(3).  See, e.g., Mancl, 375 B.R. at 516.  One court has responded:

> My adherence to the methodology set forth in §§ 1325(b)(2) and 1325(b)(3) renders moot the argument made by some critics of the Jass and Hardacre approach that "[o]ne of the aims of the means test was to limit judicial involvement-and so judicial discretion-by making mechanical the determination of abuse under section 707(b)," and that "[t]he means test in section 1325(b)(3) is meant to have the same mechanical effect." In re Farrar-Johnson, 353 B.R. at 229.

26

> The discretion once exercised by courts in applying § 1325(b)(1) related entirely to the methodology used by courts to determine the total amount of income available for commitment to the chapter 13 plan and the reasonableness of the debtor's expenses. That discretion is extinguished by faithful application of the methodologies set forth in §§ 1325(b)(2) and 1325(b)(3). No such discretion is exercised when, as contemplated by the term "projected disposable income," the court permits parties in interest to show that the circumstances relevant to those methodologies-the variables to be placed in the fixed equations of §§ 1325(b)(2) and 1325(b)(3), so to speak-have changed or are likely to change since the time frame addressed by the completed Official Form 22C.

Briscoe, 374 B.R. at n.24.

6.      Conclusion

After considering the language of the statute, the legislative history, and the policies underlying the statute, this Court will join over forty other courts that conclude that Form B22C is simply the starting point for determining the debtor's income for purposes of Section 1325(b)(1)(B).  See Pak, 378 B.R. at 267 ("[I]f the interpretation of 'projected disposable income' is not to degenerate into absurdity, deriving 'projected disposable income' from 'disposable income' must be subject to the presentation of contrary evidence before confirmation of a debtor's chapter 13 plan."); Kibbe, 361 B.R. at 312, 314-15 ("[W]here the debtor's income at confirmation . . . is materially different from the debtor's 'disposable income' as defined by § 1325(b)(2), the court must depart from the Form B22C calculation."); Warren, No. 07-30721, slip op. at 2, 3; Briscoe, 374 B.R. at 12; Mancl, 375 B.R. at 517; Purdy, 373 B.R. at 152; Arsenault, 370 B.R. at 849-51; Meek, 370 B.R. at 303; Lanning, No. 06-41037, slip op. at 5, 6; Mullen, 369 B.R. at 34; In re Knippers, No. 06-34841, slip op. at 4 (Bankr. S.D. Tex. April 26, 2007) (2007 WL 1239297); In re Beckerle, 367 B.R. 718, 721 (Bankr. D. Kan. 2007); Watson, 366 B.R. at 531; Grant, 364 B.R. at 667; Plumb, 373 B.R. at 435-36; Upton, 363 B.R. at 532; Edmondson, 363 B.R. at 220; In re Carlton, 362 B.R. 402, 406 (Bankr. C.D. Ill. 2007);  Brady,

361 B.R. at 774-75; In re Hall, No. 06-71296, slip op. at 2 (Bankr. C.D. Ill. February 12, 2007)

(2007 WL 445517); LaPlana, 363 B.R. at 265; Zimmerman, No. 06-31086, slip op. at 6, 7; In re

Ward, 359 B.R. 741, 744 (Bankr. W.D. Mo. 2007); Slusher, 359 B.R. at 297; In re Gordon, 360

B.R. 679, 683 (Bankr. S.D. Cal. 2007); Riggs, 359 B.R. at 652-53; Teixeira, 358 B.R. at 486; In

re Bossie, No. 06-00432, slip op.  at 2 (Bankr. D. Alaska Dec. 12, 2006) (2006 WL 3703203); In

re Siegel, No. 06-02291, slip op. at 1 (Bankr. D.S.C. 2006) (2006 WL 3483987); Casey, 356

B.R. at 523; Edmunds, 350 B.R. at 646; Foster, No. 05-50448, slip op. at 6; In re McPherson,

350 B.R. 38, 48 (Bankr. W.D. Va. 2006); In re Fuger, 347 B.R. 94, 101 (Bankr. D. Utah 2006);

Barraza, 346 B.R. at 732; Demonica, 345 B.R. at 900; Grady, 343 B.R. at 751; Risher, 344 B.R.

at 836; Chriss-Price, 376 B.R. at 652; In re Fuller, 346 B.R. 472, 482, 485 (Bankr. S.D. Ill.

2006); In re Gress, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006); Jass, 340 B.R. at 416, 418;

Hardacre, 338 B.R. at 722.  Even courts in the minority describe the majority approach as

"enticing, attractive, pragmatic, and logical."  Green, 378 B.R. at 37.

      The Court will presume that the debtor's CMI, as determined by Section 101(10A) and

reflected on her Form B22C, is correct.  See Lanning, No. 06-41037, slip op. at 5, 6; Mullen, 369

B.R. at 34; Knippers, No. 06-34841, slip op. at 4; Watson, 366 B.R. at 531; Grant, 364 B.R. at

667; Brady, 361 B.R. at 774-75; Hall, No. 06-71296, slip op. at 2; Zimmerman, No. 06-31086,

slip op. at 6, 7; Ward, 359 B.R. at 744; Slusher, 359 B.R. at 297; Teixeira, 358 B.R. at 486;

Foster, No. 05-50448, slip op. at 6;  Barraza, 346 B.R. at 732.  This analysis ought not to be a

battle of the forms.  Slight variations between the gross income shown on Form B22C and the

figure shown on Schedule I will not rebut the presumption.  However, if the figures are different

because of a "substantial change in circumstances such that the figures on the B22C Form are

28

not commensurate with a fair projection of the debtor's budget in the future," then the court may consider schedule I.  Ross, 375 B.R. at 442.  An above-median income debtor must demonstrate that there has been a substantial change in her income using the methodology of Section 101(10A) to prove that her future income is different from her Form B22C income.  Briscoe, 374 B.R. at 12.  Creditors, trustees, and other parties in interest may use similar methods to rebut the presumption that the debtor's CMI, as reflected on Form B22C, is correct.

## C.    Determining Expenses for the Above Median Income Debtor

Section 1325(b)(3) governs the determination of expenses for an above median income debtor.  A solid majority of courts have ruled that they may not consider the debtor's expenses as shown on her schedule J.[25]  See Stubbs, No. 07-61165, slip op. at 3 ("[T]his Court concur[s] with Barr and Hardacre . . . that the expenses of above-median debtors' must be determined in accordance with the mechanical "means test" set forth in § 707(b)."); Austin, 372 B.R. at 676 ("[T]he Debtors are bound to follow the directives of § 1325(b)(3). That subsection is unambiguous. It specifies that the expenses of above-median debtors 'shall' be determined according to § 707(b)(2)(A) and (B), the terms of which are incorporated in the means test form Part IV as 'Calculation of Deductions Allowed Under § 707(b)(2).'"); Arsenault, 370 B.R. at 852 ("The ambiguity seen between section 1325(b)(1)(B) and section 1325(b)(2) does not exist here. Rather, just as the IRS standards apply for the calculation of expenses for means test purposes for above-median-income debtors, section 1325(b)(3) mandates that the exact same standards are to apply for purposes of calculating projected disposable income under section 1325(b)(1)(B).");

---

[25]As discussed above, the plain language of Section 707(b)(2)(B), incorporated into Section 1325(b)(3), allows the expenses of an above median income debtor to be adjusted if "special circumstances" exist.  11 U.S.C. § 707(b)(2)(B).

Lanning, No. 06-41037, slip op. at 7 ("The plain language of § 1325(b)(3) summarily decides the issue."); Edmondson, 363 B.R. at 218 ("The use of the word 'shall' makes this section mandatory."); Brady, 361 B.R. at 772 ("There is no discretion woven into the statute to substitute the debtors' Schedule J expenses for the section 707(b) standardized formula for the calculation of applicable and actual expenses."); Miller, 361 B.R. at 227 ("Now, as to above median income debtors, § 1325(b)(3) directs debtors to calculate expenses based on the means test formula found in § 707(b)(2)(A) and (B)."); Devilliers, 358 B.R. at 862 ("Rather than use schedule J, Congress has substituted a different method for predicting debtor's anticipated level of expenditure."); Teixeira, 358 B.R. at n.6 ("The plain language of section 1325(b)(3) instructs that an above-median debtor's expenses 'shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2).' 11 U.S.C. § 1325(b)(3)."); Bossie, No. 06-00432, slip op. at 2 ("Section 1325(b)(3) mandates that an above-median debtor's expenses be determined under certain IRS guidelines which have been incorporated into the Code at § 707(b)(2)."); Casey, 356 B.R. at 521 ("As to above-median income debtors, the means test defines a debtor's expenses based upon a formula found in 11 U.S.C. § 707(b)(2)(A)(ii)(I)."); Demonica, 345 B.R. at 901 ("Because the Debtor's income exceeds the median family income, the Debtor is required to determine the 'amounts reasonably necessary to be expended' pursuant to § 707(b)(2)(A) and (B)."); Fuller, 346 B.R. at 484 ("Under new § 1325(b)(3), above-median income debtors may not deduct from their income their actual expenses. Rather, they must use the specific, standardized dollar amounts listed in certain IRS publications.").

**D.    Application of the Law to the Facts**

The Debtor's Form B22C shows that the Debtor and her non-filing spouse were above

30

median income earners for a household of two, with CMI of $6,219.70.  The Debtor took $5,827.18 of deductions, which were determined pursuant to Section 707(b)(2)(A).   Line 58 of the Form B22C shows disposable monthly income of $392.52.  Sixty payments of $392.52 total $23,551.20, which is what the Debtor proposes to pay to her unsecured creditors.

The Trustee argues that the Social Security income of the Debtor's non-filing husband should be included in the calculation of the Debtor's projected disposable income.  Social Security income has certain protections under BAPCPA.  It is specifically excluded from the definition of current monthly income under Section 101(10A).  Most courts have held that debtors cannot be compelled to include Social Security income in the "projected disposable income" calculation of Section 1325(b)(1)(B).   Lanning, No. 06-41037, slip op. at n.21 ("The Court agrees with In re Kibbe . . . that to the extent the definition of 'disposable income' . . . excludes certain income (such as Social Security benefits . . .), and those items are reflected on Schedule I, the Court should also exclude those items from Schedule I in determining 'projected disposable income,' where relevant."); Upton, 363 B.R. at 534-35 ("Consideration of benefits received under the Social Security Act is inappropriate for determining 'projected disposable income.'"); Ward, 359 B.R. at 745 ("[T]he Debtor is correct that her social security income is not required to be included in the analysis of whether she is contributing all of her 'projected disposable income' to her plan under § 1325(b)(1)(B)."); Devilliers, 358 B.R. at 865 ("Congress, in plain and unambiguous language, specifically excluded social security benefits from current monthly income.   The result is that they are also excluded in calculating disposable income."); Rotunda, 349 B.R. at 333 ("It was . . . Congress' decision to exclude Social Security benefits form the payment of unsecured creditors' claims even in a chapter 13 context."); see also In re

31

Pohl, No. 06-41236, slip op. at 6 (D. Kan. May 15, 2007) (2007 Bankr. LEXIS 1638) ("This Court could not force these Debtors to use their excludable income (Social Security) to fund the plan."); Seigel, No. 06-02291, 2006 WL 3483987, at 2 (Bankr. D.S.C. Nov. 20, 2006) ("In light of the exclusion of Social Security benefits from the current monthly income calculation, the Court cannot compel the Debtors to fund a plan using this income."); In re Schanuth, 342 B.R. 601, 605 (Bankr. W.D. Mo. 2006) (same).   This Court agrees.  The Social Security income of the Debtor's non-filing spouse will not be included in the determination of the Debtor's income for purposes of Section 1325(b)(1)(B).

Pursuant to the Section 101(10A), the Debtor and her spouse have CMI of $6,219.70. The Trustee offered no evidence to rebut the presumption that this amount is correct.  As for expenses, Form B22C shows that the Debtor took $5,827.18 of deductions, which must be determined pursuant to subsection (A) of Section 707(b)(2) unless "special circumstances" are shown pursuant to subsection (B).  Thus, the correct calculation of the Debtor's disposable monthly income is $392.52, as shown on her Form B22C.  Since the Plan proposes to pay sixty payments of $392.52, for a total of $23,551.20, the Plan meets the Section 1325(b)(1)(B) test.

IV.  CONCLUSION

Form B22C is simply the starting point for determining compliance with Section 1325(b)(1)(B).  Although the Court will presume that Form B22C correctly states the income of an above median income debtor, this presumption may be rebutted by consideration of the income shown on the debtor's schedule I or other relevant evidence.  On the other hand, expenses for the above median income debtor must be determined by Section 707(b)(2)(A) and

(B), and may be adjusted by a showing of special circumstances.  Within this statutory framework, a debtor, a trustee, a creditor, and any other party in interest may present evidence of the debtor's true financial circumstances at the Chapter 13 confirmation hearing.

The Court agrees with the Trustee that the Court is not bound by the statement of CMI as reflected on the Debtor's Form B22C.  However, the Trustee failed to rebut the presumption in this case, so the Objection will be overruled and the Plan will be confirmed.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| Pecolia Griffin Wilson, | ) | 07-50382 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## **<u>PARTIES IN INTEREST</u>**

Pecolia Wilson

John A. Meadows, Esq.

Kathryn L. Bringle, Trustee